Case number 22-3024 United States of America v. Deangelo Evans also known as Deangelo Evans Appellant Ms. Berman for the appellant, Ms. Colu for the appellant Good morning Mr. Evans was convicted of being a felon in possession of a firearm that a park police officer seized from his burden back in September of 2009 During his encounter with police, Mr. Evans forcefully asserted his Fourth Amendment rights by declining the consent of the search warrant officers and the park police officers violated those rights when they searched him anyway without a warrant The only basis for a warrantless pat-down of the arrest was that the officers claimed that they saw a bulb in Mr. Evans' waistband To submit that testimony was not credible I think an important starting point is that even though Judge Jackson ultimately denied the motion to suppress she was taken aback by many of the facts of the testimony No body camera video because the park police in as late as 2018 still didn't have body cameras The officers contradicted themselves and each other repeatedly They testified that they were in what they described as a high crime area They saw a bulge in Mr. Evans' pants but for several minutes did not secure the weapon During the suppression hearing, Judge Jackson said that she had never heard anything like it She asked the AUSA if she had ever seen a case where an officer who believes someone is armed because they've seen the weapon would just let somebody sit there and not pat him down I thought you just said several minutes and I thought elsewhere I read it was like one minute What is the fact finding on the time between when the first officers saw the bulge and thought it was a gun perhaps and when the pat-down actually happened? Do you know exactly what that time frame was? I don't think that they established a precise time frame There was a period between when Officer Payne first observed the bulge and then later Officer Sinecourt did and then they waited several minutes while two other units reported after those other units reported that Officer Sinecourt and one of the newly-arrived officers, Officer Pennis, grabbed the defendant and Officer Payne then seized the weapon We do know, I think, that the time between the request for backup and the backup arriving was a minute or two One of the other things that Judge Jackson noted was that she was asking whether the government was asking her to credit the officer's testimony because it's so peculiar When she ruled on the motion, she referred to their odd judgment and the fact that it seems like we set the junior varsity on him but then having stepped to the brink of making a finding at their testimony it was not credible, she backed away from that and ultimately denied the motion and we submit this was clearly wrong We recognize that this is a very high standard We recognize that the court defers to factual findings and it can only reject those factual findings when the district court credited exceedingly improbable testimony We submit that that's the case here Let me briefly set the context because I think the context is important here I'm sorry, I want to get to your context I just want to clarify, make sure I'm clear on understanding one thing You are bringing just this challenge to the district court's credibility determination as to the officers reviewing the gun and conducting the search You are not arguing, I think you even agreed that if in fact she finds and we uphold the finding that the officers saw a bulge and thought it was a gun that a search, that would be sufficient by itself believing that he was armed alone would be sufficient to justify the search if that is credited Yes your honor, I think everyone agreed in the district court You don't argue that they had to separately find that he was dangerous No your honor, I agree that if you accept the credibility findings that's the end of the case I want to set the context here which is that if you look at many of the other cases Evans wasn't doing anything inherently suspicious at the outset of the encounter wearing seasonally appropriate clothing, hands were buttoned, voluntarily left the vehicle he wasn't making any furtive gestures, he didn't lie, he wasn't sweating he didn't try to flee, there was no smell of drugs So as your honor said, this entire case is based on the testimony about the observation of a bulge Well also there's his attempts to not display that side of his waistband Yes your honor, the facts I was setting forth were kind of leading up to the officer's testimony about those observations after he got out And we submit that if you look at the entirety of their testimony there's a series of inconsistencies There are inconsistencies about the speed of the vehicle Officer Payne testified he was going at a high rate of speed The case started out in superior court, he made no mention of it Officer Payne was inconsistent on the issue of calling for backup Before he got out of the vehicle he merely called in the location of the stop but he was impeached with grand jury testimony, he had called for backup The officers were inconsistent about whether or not Officer Sinecor asked Mr. Evans for consent to search Officer Payne said he didn't, but Sinecor said that he did They were inconsistent about whether Mr. Evans initially did anything suspicious Officer Payne said that he didn't detect anything suspicious about Mr. Evans' appearance Payne testified that it was not normal for Evans to position himself as he did with respect to the vehicle but Sinecor said that was not a need Payne and Sinecor both testified that even after they allegedly detected a bulge they didn't perform a pat-down for several minutes We suppose that this is simply not possible Police routinely do pat-downs when they don't have overwhelming numerical evidence You have two armed officers consulting in front of a teenage girl and a skinny, shivering, anemic suspect in what they claimed was a high-crime area Now the district court rationalized all these oddities by saying that The fact that their testimony was not well-polished and well-rehearsed in some ways adds to their credibility This is sort of an odd standard in which heads of the government wins and tails of the defendant loses Government agents testify clearly and consistently The government wins if they testify in a way that's somewhat confusing and inconsistent The defendant loses We submit this is not an adequate basis for credibility How much would the court actually say about that increasing their credibility? Pardon me? What exactly did the court say about the lack of coordination in the testimony increasing their credibility? Well, she said the fact that their, in appendix 21, the fact that their testimony was not polished or well-rehearsed in some ways adds to their credibility In some ways And that's where I think we get into a heads and tails Wow, so that's, what does that tell us? Sort of quaint, right? Quaint, rather quaint and maybe even charming That's the officer Yes, Your Honor Not sticking to a script Yes, I don't want to consume my rebuttal time here, but I would simply point out that we have cited the cases The civil case in this circuit, the Bishop case, the criminal case in the Second and Third Circuit where courts have applied the Anderson standard and reverse credibility finding for criminal cases We would ask you to do so Thank you Good morning, Your Honors May it please the Court and the Council Chim Namso Kalu on behalf of the United States Your Honors, we are asking this Court to affirm the District Court's denial of Mr. Evans' motion to suppress Because the District Court, the record does not show that the District Court clearly erred in crediting the officers That's true One of our rationales was that they were the junior varsity But in fact, at least one of the officers had been serving for a decade and participated in 20 to 40 gun recoveries That was part of the record, too So how is it credible for the District Court to conclude that these were sort of inexperienced, naive officers when in fact, at least one of them was highly experienced? Well, I think that the comment about the officers being sort of junior varsity perhaps went to a critique of their tactical judgment in this situation I don't take that to say that she thought that they were totally inexperienced Perhaps rather that they, as she said later, 282 in the appendix She said, she talked about the fact that they didn't use all available force And I think perhaps They didn't use any They let him go sit over on the sidewalk Which the officers explained And the court did discuss the officers' testimony that the reason that they chose not to, for example, draw their service weapons or take Mr. Evans down was because they had gotten to where they thought the situation was safe or the situation was calm Well, the question is why they didn't just do a pat-down which officers routinely do in tense situations for their own safety And both of these officers had been involved in many, many, many, many, many, many gun recoveries I mean, are you aware, you're an U.S.A. and you prosecute these cases How common is it for officers when they suspect someone has a gun to, instead of putting them down, tell them to go sit over there on the sidewalk with no officer around them and wait one to two minutes before a pat-down occurs? I can't say how common it is Have you ever seen it before? I have not personally, aside from this case I do want to push back a little, though, Your Honor Officer Sinecord testified that when Mr. Evans went to go sit on the grass with his ankles crossed, his arms away from his waistband that Officer Payne was standing two feet away from him and was facing Mr. Evans So he was not unattended And I also do think that, although it may be, it might seem unusual and the district court said that this was an unusual situation Unusual does not equal not credible She took all of these factors into consideration She also accepted, again, the officer's testimony that they were endeavoring to maintain a calm situation which one could argue was reasonable There were two officers There were two individuals that they had stopped as well They believed one of them to be armed That's pretty common There's not just one person being stopped Really the point is, so everything The officers felt safe enough to keep doing their business without doing a pat-down as long as Mr. Evans was over on the sidewalk and I forget, he had to have his hands in a certain place So then what happened that made a Between the time that he was sitting there, just being They kept an eye on him but did not feel a pat-down necessary And then backup shows up and a pat-down's done Now what happened in his behavior? What factual change occurred that suddenly made a pat-down necessary when it hadn't been necessary for the preceding two minutes? They have to show necessity at the time of the pat-down So what made it necessary at that point? I don't think that the officers ever testified they believed a pat-down was not necessary They need to testify, their behavior showed What I took from their behavior and from their testimony was that they believed that a pat-down was necessary but that they needed to do it in a safe manner And in their judgment they believed that the safest way to accomplish a pat-down in this situation, where Mr. Evans was initially agitated and then responded favorably to being calmed down I believe is the word they used by Officer Payne They wanted to maintain that calm situation He was calmed down before he went over to the sidewalk He was calmed down when he was still at the side of the car When they're calm enough, they're like, okay, just fine, go sit over there Keep your hands out where we can see them So he was calm long before this They could have patted him down once he calmed down by the car Again, the officers were I think it might be a different situation if it were two officers and one person But they saw what they believed was a firearm on Mr. Evans and didn't know what was going on with the driver of the car Potentially she could be armed or get involved in the situation Did they pat her down? They did not pat her down I don't see that in the record But there also was no testimony that they saw anything that they believed to be false So they didn't have any reason to think there's no evidence they thought she was armed or dangerous Aside from the fact, perhaps, that they believed Mr. Evans to be armed and there is some case law, I believe, suggesting that where one occupant of a car is armed that it would be permissible to pat down the others But even all of that said Again, I think that the key in this case is whether it was clear error for Judge Jackson to have credited this testimony And for everything that we have been discussing this morning that may come across as unusual the officers explained why they took the actions that they took And the judge accepted their explanations And I think that because there is support in the record for the findings of the court meeting that you can't say that she clearly erred in finding that the officers were credible in testifying as to There's testimony that for a while it was just one officer and then when he was on the sidewalk the second officer, who was on the other side of the car saw the bulge So they thought, at least by the time he was over on the sidewalk they both thought he was armed And he was calm at that point But neither of them did anything What evidence is there in the record that they thought he was both armed and dangerous? I think that the danger could be inferred from the extended mag There was, Officer Payne testified to seeing not only a bulge at the waistband but also a long hard object poking out of Mr. Anderson's hands He thought that that was a metal or hard object based on the way that it was interacting And as Judge Jackson pointed out in her ruling And this is at 280 in the appendix There was no attempt to even argue that the magazine would not have created the bulge that was described by Officer Payne And that was consistent with the way that the firearm was in fact found in the defendant's pants And so I think that based on those factors There's no factual finding by the judge There's no testimony by either officer that they felt he was dangerous because he was armed and the behavior was inconsistent with thinking he was an immediate or imminent danger to them And I agree you're right to point out that there was sort of a long bulge but there's again no testimony that I saw and tell me if you're wrong that they thought this was a particularly dangerous firearm or an illegal firearm given the size and length of the bulge I believe Officer Payne testified to the potential that Mr. Evans might run that initially before they were able to calm him down that he was looking side to side like he might run That's not a reason he wouldn't go let him sit on the sidewalk by himself would you? Well because by the time he went over and actually spoke to him he was able to calm him down But again I think the danger is sort of the officer's perception of danger is inherent in the way that they approach to this situation which was that they wanted backup They did not feel safe enough to conduct the pat-down at that moment by themselves When did they call for backup? They called So in the There were two calls for backup Two calls to the other units that they were controlling The first was when they initially stopped the car Before they felt endangered or saw him Was Mr. Evans still in the car the first time they called for backup? There was a clarification that Officer Payne made in his testimony He testified in the grand jury that that was a call for backup that that first time when they stopped but he clarified during his testimony that when he said backup that he was giving his location their location to the other officers just to let them know where they were The actual call for backup in other words please come to where we are please respond and assist us was after they had stepped Mr. Evans out of the vehicle and they had both seen the bulge Two different and I see I'm over my time and so unless there are further questions we would just ask the court to affirm Thank you very much Thank you, Your Honor Mr. Berman How much time does Mr. Berman have? Two and a half? Okay Counsel has correctly stated that there was only one call for backup when Officer Payne initially made the stop he said that he called in the location of his stop that's at Appendix 17 Second point the responsible counsel said is that no one testified that he thought that that what was in going down Mr. Evans' leg was an extended magazine or any other kind of weapon that they find that out after the fact but Officer Payne's testimony simply that he saw a large bulge going down his pant leg that's at Appendix 49 and 50 and that he believed the lower bulge was either a metal object or a hard object in Appendix 3 but that isn't a suspicion that there's a weapon there I think it's important to note in reviewing these credibility determinations and in reviewing the district court's you know candid finding that the officers made an odd judgment in a secure setting is that this case didn't arise out of routine traffic enforcement it arose out of officers looking to make a gun stop this was not a traffic unit it was a prime patrol unit in Appendix 63 to 66 an unmarked car they were doing a proactive patrol or an investigation in Appendix 110 and 126 they made a high number of stops that evening in Appendix 124 they were highly motivated they asked again and again and again for consent even when Mr. Evans said no I think that's something the court can consider in assessing the credibility of their testimony about the bulge particularly considering the credibility assessing the credibility of testimony they saw a bulge and a firearm that everyone agrees was only three inches long and one inch wide Anderson says that refer to the trial judge if the witnesses have told a coherent and spatially plausible story that is not internally inconsistent we submit that pain or failed that test we would ask the court to reverse and remand the instructions Thank you Any more questions? Thank you Mr. Berman you were appointed by the court to represent Mr. Evans That's correct Mr. Evans in this case and the court thanks you for your assistance Thank you
judges: Millett, Rao, Ginsburg